UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

OLIVER KIMMONS,

     Petitioner,

     v.

UNITED STATES OF AMERICA,

     Respondent.

———————————————————

16-CR-63
23-CV-645
DECISION & ORDER

The petitioner, Oliver Kimmons, has moved under 28 U.S.C. § 2255 to vacate his judgment of conviction. Docket Item 169.[1] He also has twice moved to amend his petition to add affidavits in support of his claims. Docket Items 175 and 180. For the reasons that follow, the Court grants Kimmons's motions to amend but ultimately denies his section 2255 motion.

## BACKGROUND

On April 18, 2019, Kimmons pleaded guilty to count 10 of the second superseding indictment, which charged him with sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a) and 1591(b)(1). *See* Docket Item 128. The parties agreed under Federal Rule of Criminal Procedure 11(c)(1)(C) that Kimmons's sentence would not exceed 240 months. Docket Item 127 ¶ 19. Kimmons waived his right to appeal or collaterally attack his conviction or any sentence that was not more

---

[1] Citations are to the criminal docket, number 16-cr-63.

than what he and the government agreed was the high end of his range under the United States Sentencing Guidelines ("Guidelines"): 262 months' imprisonment. *Id.* ¶¶ 25-26.

On December 16, 2019, this Court accepted the plea agreement and sentenced Kimmons to 240 months of incarceration and five years of supervised release. *See* Docket Item 149. Kimmons filed a direct appeal, which the Second Circuit subsequently dismissed. Docket Item 163.

Kimmons now moves for relief under 28 U.S.C. § 2255. Docket Item 169. For the reasons that follow, the Court denies Kimmons's motion.

## DISCUSSION

## I.      MOTION TO VACATE THE JUDGMENT UNDER 28 U.S.C. § 2255

Kimmons seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). A court may dismiss a section 2255 petition without first conducting a hearing if the petition and record "conclusively show" that the petitioner is not entitled to the relief he seeks. *Id.* § 2255(b).

### A.      Kimmons's Waiver

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841

2

F.3d 578, 580 (2d Cir. 2016) (per curiam); *see Cook v. United States*, 84 F.4th 118, 122

(2d Cir. 2023).  Indeed, if such waivers are not enforced, the promise not to challenge a

conviction and sentence "becomes meaningless and would cease to have value as a

bargaining chip in the hands of defendants."  *Cook*, 84 F.4th at 122 (citing *United States*

*v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995)).

"[E]xceptions to the presumption of the enforceability of a waiver . . . occupy a

very circumscribed area of [the Second Circuit's] jurisprudence."  *United States v.*

*Burden*, 860 F.3d 45, 51 (2d Cir. 2017) (per curiam) (quoting *United States v. Gomez-*

*Perez*, 215 F.3d 315, 319 (2d Cir. 2000)).  In fact, the Second Circuit has noted only

four circumstances under which such a waiver might not be enforceable:

> (1) where the "waiver was not made knowingly, voluntarily, and competently[";] (2) where the sentence was "based on constitutionally impermissible factors, such as ethnic, racial[,] or other prohibited biases[";] (3) where the government breached the agreement containing the waiver; and (4) where the district court "failed to enunciate any rationale for the defendant's sentence."

*Id.* (quoting *Gomez-Perez*, 215 F.3d at 319).

A claim that defense counsel was ineffective "challeng[es] 'the constitutionality of

the *process* by which [the defendant] waived [his rights]'" and is one way that a

petitioner can demonstrate that his plea was not knowing and voluntary.  *See Parisi v.*

*United States*, 529 F.3d 134, 138 (2d Cir. 2008) (quoting *United States v. Hernandez*,

242 F.3d 110, 113 (2d Cir. 2001) (per curiam)); *see also United States v. Lloyd*, 901

F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty plea [is] invalid and

his appeal waiver [is] unenforceable if he prevail[s] on his claim that he received

constitutionally ineffective assistance of counsel during his plea proceedings").  That is

because a claim "challenging the attorney's *advice* about [the defendant's] bargaining

3

position . . . connect[s] the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct." *Parisi*, 529 F.3d at 139 (emphasis in original).

Here, Kimmons tries to do just that:  His motion attempts to circumvent his collateral-attack waiver by arguing that his counsel, Mark Foti, was ineffective.  More specifically, Kimmons says that Foti (1) failed to retain a private investigator to investigate the sex-trafficking victims; (2) failed to "renegotiate" Kimmons's plea in light of the fact that Kimmons was not responsible for a victim's overdose death; (3) failed to argue that the Court lacked jurisdiction over the sex-trafficking charge because there was no interstate nexus; (4) failed to challenge K.V.'s status as a crime victim; (5) coerced Kimmons into a plea; (6) failed to seek a mental health evaluation for Kimmons; and (7) failed to inform Kimmons  of certain consequences of his guilty plea.  Docket Item 169.  For the reasons that follow, however, none of these claims—individually or in combination—pass muster.

### B.    Ineffective Assistance of Counsel

### 1.    The Applicable Law

To establish ineffective assistance of counsel, a defendant must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen,* 427 F.3d 164, 167 (2d Cir. 2005) (citations omitted) (quoting *Strickland v. Washington,* 466 U.S. 668, 688 (1984)).  District courts need not address both components if a petitioner fails to establish either one.  *Strickland*, 466 U.S. at 697; *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018).

Under the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner may overcome this presumption by showing "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689. In considering whether counsel provided effective assistance, courts look to the totality of the circumstances, are "highly deferential," and make "every effort . . . to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 688-89.

Under the second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, including "the overall integrity of the proceeding," *Santiago-Diaz v. United States*, 299 F. Supp. 2d 293, 300 (S.D.N.Y. 2004). "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations omitted) (quoting *Strickland*, 446 U.S. at 687, 693).

In the context of a guilty plea, the prejudice prong requires the defendant to "show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (discussing ineffective assistance claim in the context of a motion to withdraw a plea). That is, a defendant must show that "the outcome of

5

the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

A defendant may make this showing by "producing both a sworn affidavit or testimony stating that he would have accepted or rejected a plea agreement but for his counsel's deficient performance and also some additional 'objective evidence' supporting his claim." *United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (summary order) (quoting *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (per curiam)).  Where a defendant specifically claims that counsel misled him as to the possible sentence that might result from his guilty plea, the "issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *Arteca*, 411 F.3d at 320 (citing *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992)); *see United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (per curiam) (counsel's performance is generally not considered deficient even if counsel made an incorrect estimation or prediction of sentencing before the defendant pleaded guilty).

### 2.    Kimmons's Claims

#### a.    Failure to Hire a Private Investigator

Kimmons first argues that Foti was ineffective for not retaining a "private investigator to investigate the alleged [sex-trafficking] victims as the victims being used and transported to the farms and camps where [the government] stated that prostitution was transpiring."  Docket Item 169 at 19.  But Kimmons admitted under oath the facts supporting sex trafficking, including that he took victims "to 'camps' for the purposes of engaging in commercial sex acts.'"  *See* Docket Item 127 ¶ 8; Docket Item 167 at 37-41.

6

So it is not clear how using a private investigator would have changed anything. Kimmons does not, for example, identify any specific impeachment information that such investigation would have provided.

Kimmons therefore has not established ineffective assistance of counsel based on Foti's alleged failure to use a private investigator to investigate the sex-trafficking victims before Kimmons pleaded guilty.

### b.    Failure to Renegotiate Kimmons's Plea Agreement Regarding the Overdose Death of H.C.

Kimmons next argues that Foti was ineffective for "not renegotiating the plea based on the fact that [Kimmons] was never actually the cause of death, and because [Kimmons] was not actually responsible for the victim's death." Docket Item 169 at 20. "Had counsel properly challenged the autopsy report," Kimmons says, "the proceedings would have been so much different." *Id.* Kimmons also moves to amend his petition to include several affidavits in support of his argument that he did not cause H.C.'s death. *See* Docket Item 175 at 3; 180 at 3-4. The Court grants the motions to amend and has considered the affidavits.

Ultimately, however, even if Kimmons is correct that he did not cause H.C.'s death, he does not explain why that would have made a difference in his conviction or sentence; nor can the Court discern a reason. The plea that counsel negotiated was to one count of sex trafficking by force, fraud, or coercion under 18 U.S.C. § 1591. Docket Item 127 ¶ 1. Kimmons did not admit to a drug offense, let alone a drug offense resulting in death, and those charges were dismissed. *See* Docket Item 149. Nor did Kimmons's Guidelines calculation include drug crimes or the overdose death. *See* Docket Item 147 ¶¶ 36-75; Docket 151 at 31-32. And to the extent Kimmons suggests

7

that without the overdose death, he could have negotiated a plea that did not include the sex trafficking, there is no evidentiary support for that contention.

Consequently, Kimmons has not demonstrated "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different," as is required under *Strickland*.  *See* 466 U.S. at 694.

### c.    Failure to Argue Lack of Interstate Nexus and that this Court Therefore Lacked Jurisdiction

Kimmons next faults Foti for failing to argue that the Court lacked jurisdiction on the sex trafficking charge because there was no interstate nexus.  *See* Docket Item 169 at 21.  The Court addressed this issue at Kimmons's plea hearing, and not only did counsel agree that there was an interstate nexus, but Kimmons himself explicitly waived his right to argue that the interstate nexus was insufficient:

> THE COURT:  Okay.  And tell me the interstate nexus that we discussed earlier.
>
> [PROSECUTOR]:  Your Honor, the government would be prepared to prove that in making arrangements for the commercial sex acts, the defendant and the victims utilized cellular communications in particular cell phones to set up the commercial sex acts.  The defendant would provide condoms to the victims, the condoms having been manufactured in the stream of interstate commerce.  The defendant would provide drugs to the defendant, and the defendant would -- or, to the victims, excuse me, and the defendant

would also provide transportation using his personal car to take them to engage in commercial sex acts.

THE COURT:  Okay.  And you're confident, based on the caselaw, that that [states] a sufficient interstate nexus; is that right?

[PROSECUTOR]:  That's correct, Your Honor.

THE COURT:  And, Mr. Foti, you agree with that; is that right?

MR. FOTI:  I -- I -- I can imagine a situation where I may make arguments otherwise, but certainly I've reviewed the case law that supports that position, and we don't – and we would agree with it for these proceedings.

THE COURT:  Okay. You're waiving any argument with respect to --

MR. FOTI:  Yes.

THE COURT:  -- with respect to -- Do you understand what we're talking about, Mr. Kimmons?

THE DEFENDANT:  Yes. I do.

THE COURT:  Okay.  And do you understand that you and your lawyer, by virtue of taking this guilty plea, are waiving any argument that you might have that there's not a sufficient interstate nexus; do you understand that?

THE DEFENDANT:  Right.

Docket Item 167 at 41-42.

What is more, "it is well established that the burden of proving a nexus to interstate commerce is minimal." *United States v. Elias*, 285 F.3d 183, 188 (2d Cir. 2002).  And in sex trafficking cases, the Second Circuit has found activity similar to Kimmons's sufficient to establish an interstate nexus.  *See United States v. Shine*, 2022 WL 761520, *2 (2d Cir. Mar. 14, 2022) (summary order) (defendant "used debit cards and paid for hotels rooms, cell phones, and condoms to support his sex trafficking operation"); *United States v. Graham*, 707 F. App'x 23, 26 (2d Cir. 2017) (summary order) (conduct "involved the use of internet advertisements, condoms, hotels, and

rental cars"). Thus, the Court finds that counsel was not ineffective for failing to press the nexus argument.

### d. Failure to Challenge K.V.'s Status as a Crime Victim

Kimmons also argues that his counsel was ineffective for not challenging the Court's designation of K.V. as a crime victim. Docket Item 169 at 21-22. The Court interprets this as challenging its decision to allow K.V. to speak at Kimmons's sentencing.

But Kimmons's counsel indeed challenged K.V.'s speaking at sentencing. *See* Docket Item 151 at 3-8. What is more, Kimmons unsuccessfully raised the issue on direct appeal. *See United States v. Kimmons*, 2022 WL 2344088, at *1 (2d Cir. June 29, 2022) (summary order). Thus, because defense counsel raised this issue, both before this Court and on appeal, there is no basis for Kimmons's assertion that his defense counsel was ineffective for failing to do so.

### e. Coercion

Kimmons next argues that his plea was involuntary because his attorney "verbally coerced" him into pleading guilty. Docket Item 169 at 10, 22-23. But Kimmons's sworn statements under oath in response to the Court's questions at the plea colloquy belie that assertion:

> THE COURT: Has anyone attempted in any way to threaten you, threaten a family member, or threaten anyone close to you to make you plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Is anyone forcing you to plead guilty?
>
> THE DEFENDANT: No, sir.

THE COURT:  Whether you plead guilty is your decision, it's not your lawyer's.  You should do what you want to do, not what you think your lawyer wants you to do, not what you think I want you to do, not what you think anyone else wants you to do.  This is your decision.  Do you want to plead guilty?

THE DEFENDANT:  Yes, sir.

THE COURT:  And have you decided to plead guilty voluntarily and of your own free will?

THE DEFENDANT:  Yes.

Docket Item 167 at 23-24.  The "bare allegations" in Kimmons's petition do not overcome these sworn statements to the contrary, which must be given the "presumptive force of truth."  *See Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010) (citing *Hernandez*, 242 F.3d at 112-13 (per curiam)).

### f.  Failure to Seek a Mental Health Evaluation

Kimmons also says that Foti was ineffective because he did not recommend that Kimmons obtain a mental health examination based on Kimmons's "past mental health issues and disorders" and family history.  Docket Item 169 at 23.  But Kimmons does not suggest what a mental health evaluation would have accomplished or how it would have changed the outcome of his case.  Thus, Kimmons has not established ineffective assistance of counsel on this basis.  *See Lafler*, 566 U.S. at 163.

### g.  Failure to Inform Kimmons of Certain Collateral Consequences

Finally, Kimmons claims that Foti was ineffective for neglecting to inform Kimmons that his plea would make him ineligible for consideration under the First Step Act, as well as for designation in a "camp" facility, due to his status as a sex offender.  Docket Item 169 at 27-28.  Those consequences, however, do not have a "definite,

11

immediate, and largely automatic" consequence; thus, they are merely "collateral."  *See United States v. Salerno*, 66 F.3d 544, 551 (2d Cir. 1995) (quoting *United States v. U.S. Currency in the Amount of $228,536.00*, 895 F.2d 908, 915 (2d Cir. 1990)).[2]  And "possible consequences of a guilty plea [that] are 'collateral' rather than direct . . . need not be explained to the defendant in order to ensure that the plea is voluntary."  *Id*. at 550 (quoting *U.S. Currency in the Amount of $228,536.00*, 895 F.2d at 915).  Thus, even if it is true that Kimmons was not informed of those consequences, that does not render his plea involuntary.

## **CONCLUSION**

For the reasons stated above, Kimmons's motions to amend his petition, Docket Items 175 and 180, are GRANTED, but his motion to vacate his judgment of conviction under 28 U.S.C. § 2255, Docket Item 169, is DENIED.  His petition in W.D.N.Y. Docket No. 23-cv-645 is DISMISSED; and the Clerk of the Court shall close that case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  *Coppedge v. United States,* 369 U.S. 438 (1962).  The Court also certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the petitioner has failed to make a substantial

---

[2] Other examples of "collateral consequences include parole eligibility or revocation, the likelihood of an undesirable military discharge, and the potential for civil commitment proceedings."  *U.S. Currency in the Amount of $228,536.00*, 895 F.2d at 915 (internal citations omitted).

12

showing of the denial of a constitutional right.  Accordingly, the Court denies a certificate of appealability.

Kimmons must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date this decision and order.  *See Williams v. United States*, 984 F.2d 28, 31 (2d Cir. 1993).  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.


SO ORDERED.

Dated:   June 24, 2026
             Buffalo, New York


                                                     */s/ Lawrence J. Vilardo*
                                                     LAWRENCE J. VILARDO
                                                     UNITED STATES DISTRICT JUDGE

13